Clerk's Office
USDC, Mass.
Date 8/12/20
By KG
Deputy Clerk

Pro Se 1 (Rev. 09/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT
for the
District of Massachusetts

| | |
|---|---|
| **(Al) Richie Accime** <br> Plaintiff(s) **(Domicile)** <br> *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* <br> -v- <br><br> **Boston Medical Center, et al** <br> Defendant(s) <br> *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | Case No. _____ <br> *(to be filled in by the Clerk's Office)* <br><br> Jury Trial: *(check one)* ☒ Yes ☐ No |

## COMPLAINT FOR A CIVIL CASE

I. **The Parties to This Complaint**

A. **The Plaintiff(s) (Domicile)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name: Richie Accime
Mailing - Street Address: 124 Armandine st
City and County: Dorchester
State and Zip Code: MA, 02124
Telephone Number:
E-mail Address: Ra.legal.87@outlook.com

B. **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Page 1 of 5

10.)

Pro Se 1 (Rev. 09/16) Complaint for a Civil Case

Defendant No. 1
- Name: Boston Medical Center
- Job or Title (if known):
- Street Address: One Boston Medical Center Place / 850 Harrison Ave
- City and County: Boston
- State and Zip Code: MA, 02118
- Telephone Number: 617.414.4213
- E-mail Address (if known):

Defendant No. 2
- Name: THERESA (A) PAdovANI
- Job or Title (if known): Security Officer
- Street Address:
- City and County:
- State and Zip Code:
- Telephone Number:
- E-mail Address (if known):

Defendant No. 3
- Name: KELLY KWOK
- Job or Title (if known): Doctor
- Street Address:
- City and County:
- State and Zip Code:
- Telephone Number:
- E-mail Address (if known):

Defendant No. 4
- Name: DONNA PETROZZI
- Job or Title (if known): Nurse
- Street Address:
- City and County:
- State and Zip Code:
- Telephone Number:
- E-mail Address (if known):

Pro Se 1 (Rev. 09/16) Complaint for a Civil Case

Defendant No. 5
- Name: Greg Leblanc
- Job or Title (if known): Security
- Street Address:
- City and County:
- State and Zip Code:
- Telephone Number:
- E-mail Address (if known):

Defendant No. 6
- Name: Joseph Cataldo
- Job or Title (if known): Security
- Street Address:
- City and County:
- State and Zip Code:
- Telephone Number:
- E-mail Address (if known):

Defendant No. 7
- Name: Derrick Downs
- Job or Title (if known): Nurse
- Street Address:
- City and County:
- State and Zip Code:
- Telephone Number:
- E-mail Address (if known):

Defendant No. 8
- Name: Robert Gil
- Job or Title (if known): Doctor
- Street Address:
- City and County: Cambridge
- State and Zip Code: Massachusetts
- Telephone Number:
- E-mail Address (if known):

11.)

Pro Se 1 (Rev. 09/16) Complaint for a Civil Case

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

[X] Federal question     [X] Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

A.  **If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case. Universal Declaration of Human Rights: Article 18, Article 30, Article 4, Article 5, Article 8 Federal Constitution: 1st Amendment /Amendment 4/Amendment 5/ Amendment 8/ Amendment 14 section 3/ Martinez v. California / Howlett v. Rose/ Intellectual Property Theft/Piracy/ 42 section 1983 & 1985

B.  **If the Basis for Jurisdiction Is Diversity of Citizenship**

   1. The Plaintiff(s)

      a. If the plaintiff is an individual
         The plaintiff, *(name)* without prejudice "(Al)Richie Accime" is a citizen of the Country ~~State~~ of *(name)* (Al Mooroca) America.

      b. If the plaintiff is a corporation
         The plaintiff, *(name)* _____, is incorporated.
         under the laws of the State of *(name)* _____,
         and has its principal place of business in the State of *(name)*
         _____

      *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

   2. The Defendant(s)

      a. If the defendant is an individual
         The defendant, *(name)* _____, is a citizen of
         the State of *(name)* _____. Or is a citizen of
         *(foreign nation)* _____.

Page 3 of 5

Pro Se 1 (Rev. 09/16) Complaint for a Civil Case

b. If the defendant is a corporation

The defendant, (name) __BOSTON MEDICAL CENT__ER, is incorporated under the laws of the State of (name) __MASSACHUSETTS__, and has its principal place of business in the State of (name) __"__ __"__.

Or is incorporated under the laws of (foreign nation) _____,

and has its principal place of business in (name) _____.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3. The Amount in Controversy

The amount in controversy-the amount the plaintiff claims the defendant owes or the amount at stake-is more than $75,000, not counting interest and costs of court, because (explain):

Of Human Rights Violations, Violation of Bodily Integrity, Emotional Distress, illegally out-fitted with a pacemaker, Electronic Harassment & Targeting, Assault & Battery

III. **Statement of Claim**

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

On June 5th 2011 pepper sprayed by Hyde Park Division Boston Police Dept., non violent and sitting down; 1) assault & battery; Police Brutality. No crime committed; No probable cause, no warrant issued, no section 12, "pink" or "white paper" to be involuntarily hospitalized or evaluated; 4th amendment — 2) illegal search & seizure, human rights article 3, 5, 8, 9. Right to refuse medication, legally competent, security and hospital staff no regard for right to refuse, Richie Accime pepper sprayed each time and restrained for refusal though non-violent and no emergency; 3) assault & battery; R.O.C.O. Please see attached document "Background/Overview". also law memorandums.

Boston Medical Center Security Personnel

IV. **Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages. Injunctive relief & sanctions against hearsay evidence and hospitalizations, violation of bodily integrity, direct assault on nervous system, pepper sprayed for being "big, ripped," and of original descent; dark skinned, racial & genetic discrimination possibly outfitted with pacemaker, seen & recall random injection to upper back while being transferred to Cambridge Cahill taking place while in & out of consciousness, emotional distress, monetary compensation →

Page 4 of 5

13.)

Pro Se 1 (Rev. 09/16) Complaint for a Civil Case

Pain & Suffering at injection site demanding intellectual property stolen and $35 million (35,000,000) USD.

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 1-16-2020

Signature of Plaintiff: without prejudice Richie Accime
Printed Name of Plaintiff: (AI) Richie Accime

### B. For Attorneys

Date of signing: _____

Signature of Attorney _____
Printed Name of Attorney _____
Bar Number _____
Name of Law Firm _____
Street Address _____
State and Zip Code _____
Telephone Number _____
E-mail Address _____

# Background / Overview

1. In 2011, plaintiff, (without prejudice) "**Richie Accime**," had a verbal disagreement with a family member, at **229 Wood Ave, Hyde Park, Ma**. This occurred on <u>**Sunday, June 5th, 2011**</u>, sometime in the afternoon. The plaintiff, "Richie Accime," exited the residence and proceeded outside through a side door leading onto **Westminister St**.

2. There the plaintiff began pacing on the sidewalk of Westminister St wearing shorts and a cut off sleeveless shirt. There are no people in view on the street or proceeding up and down.

3. Not long thereafter, a neighbor, daughter of the landlord exits the house via the back-porch and began to de-escalate the situation, maintaining that it was only verbal, prior and up to that point it had been non-violent. After about 5 min but no more than 10 min., two police vehicles arrive at the address described above. They are described as follows, one policeman being of darker descent, steady gait, and about 5'11. The other belonging to the paler skinned races of mankind and heavy set in comparison to his colleague. They are identified as **Quigly** and **Lazzano**. Each move to the family members' opposing shoulder, facing myself and myself facing the building respectively.

4. Taking steps to ensure my safety and avoid a needless search, I, myself, express my disgust of the situation and proceed to voluntarily empty out my pockets. Myself asks the heavy set cop, "How did he pass the fitness exam?" to become a police man. He becomes visually "red," and otherwise changed facial expression.

5. This is done with reservation to my Natural right of freedom of speech, protected in ***Declaration of Indigenous Rights***, ***Universal Declaration of Human Rights*** and the ***Federal Constitution***. Shortly thereafter, myself, requests on three separate occasions," Am I free to go?" He waves his hand and tells me I "am free to go."

6. I, myself, back away slowly and continue my regimen of training for a Regional NFL (National Football League) Combine **(Insert Exhibit)**. I, myself, begin jogging up Westminister St. towards Wood Ave. and take a right down Wood Ave.

7. During my first set of jogs, two people are shouting while myself am halfway down the street. On further observation they are the same two policemen from the original scene of engagement.

8. They are shouting, "We just want to talk to you." For my own safety, it is decided that myself, will speak to them, if I am still willing at the location of the initial engagement.

9. At some point, back up Police and EMS are contacted and engage me near River St. and the end of Wood Ave. Myself continues jogging and proceed down a street before River St. and perpendicular to Wood Ave.

10. An EMS cabin vehicle is seen by me heading down the street parallel and closest River St., at tthis point, for my safety and wellbeing, myself, decided to return to the original scene because of concerns of being brutalized and a small crowd of people being gathered at 229 Wood Ave., Hyde Park, MA.

11. Before returning to that location, myself, encounters friends **Jerez Maguilicuddy** and **Steven Hawkesworth** at **Ross Playground**, they are informed, of my situation at that time. Mr. Hawkesworth attempts to act as mediator to diffuse the situation. I await at the park while he goes to the original scene and communicates to parties involved.

12. Steve is informed by myself, that should myself return, it would be only to grab my belongings and that I have nothing to say to police

13. On returning to the back porch of 229 Wood Ave. not long after, the same heavy set police whom I asked the "fitness exam," question to casually walks by amid 4-6 additional cops and begins to pepper spray me while myself had remained seated.

14. Myself stands up only to be tackled into the back porch and am beaten with batons, knee strikes, while one cop puts his knee to my neck while, myself, am face down with my hands interlocked making a double fist under my chest.

15. Steve is told to "close the door," but does not. After remaining in this same position for some time, the batons and other tools are utilized in attempts to pry my hands and arms from under me.

16. Eventually, I, myself, ask what probable cause or crime did I commit to merit arrest. In response, myself, am told that "you are resisting arrest right now," at this point, myself, willingly free my arm and hands from under me and allow myself to be placed in handcuffs. Myself am escorted onto a stretcher and taken by EMS to Boston Medical Center for what myself is informed proper treatment for pepper spray to the face. On arrival myself am insisted to sit in a wheelchair to which, myself, declines.

17. Myself am taken to an isolated room being attended by **Joseph Cataldo** of security and other hospital staff. No one introduces themselves, not even a doctor, and my body is placed in four point restraints and they all exit.

18. Myself removes said restraints and sit up on the bed until Nurse **Derrick Downs** returns and requests that I, myself, return to the restraints. His requests are adhered to; up to this point and prior there is no violence on my part. Either at the house of the family member, the engaging cops, the transport by EMS, or at the hospital.

19. After the initial room myself am placed in, myself am transported to a more secluded area of the hospital distinctly referred to as "Psych ER," with a long corridor supervised by an attending nurse

and three distinct rooms with one bed only, one glass window into the corridor with all three rooms isolated from each other.

20. Myself am placed in the room to the right of the corridor on entering. This description corresponds to the hospital (BMC) blueprint for the year 2011; with the Psych ER being in the northeast side of the hospital, with an ambulance bay on the same side.

21. After being placed in this room, having had my vitals taken, myself am offered medication and having been familiarized with involuntary hospitalizations from friends and family members in that field, myself decide to accept medication to speed the process of discharge by showing compliance.

22. Myself may have been offered medication a second time that day which myself may or may not have accepted.

23. Nevertheless, I do not agree with how the medication interacts with my body and how it makes me feel. The following Monday, the normal operations of the hospital continues as usual, except that I, myself, am refusing medication as I still had the valid right to do.

24. Myself doesn't engage in any yelling, shouting, or threats of violence. The Nurse **Donna Petrozzi** or another, show complete disregard for my right to refuse.

25. Donna calls for security despite my right to refuse. Security arrive both ignorant to the situation and the law regarding my right to refuse.

26. They themselves by admission of words said to me and their own written reports, admit to violating rights reserved and exercised by me, namely, my right to "refuse until adjudicated incompetent," they state in one report "If you refuse medication you will be pepper sprayed, restrained and IM'ed.

27. PLEASE FIND IN ATTACHMENT FOLLOWING THIS DOCUMENT, THE SUPPORTING MEMORANDUM OF LAW.

28. I am assailed with pepper spray by numerous assailants of the security staff, restrained and injected.

29. Following this myself loses consciousness of my body, surroundings, and wake up hours later noting a drastic change in my mood and dis-ease in my body.

30. Throughout this, myself am completely non-violent though my feeling of self-control has decreased. At some point, myself, am visited by two friends on two separate occasions.

31. One said visit is cut short by "Donna Petrozzi," and requests that myself take medication to which I decline, respectfully.

32. Security is requested for no other reason but my declining to take medication, which prior to this point and after I am within my lawful right to refuse. It is neither an emergency situation, myself has remained non-violent, not yelling, not shouting, and on security arriving myself am literally given the ultimatum by disclosure and then action by Boston Medical Center Staff and security, take the meds or be pepper sprayed.

33. Again I, myself, am pepper sprayed by at least 3 and up to 6 or 7 staff members, myself am restrained on a bed and then IM'ed.

34. This pattern of refusing medication and being pepper sprayed continues until the last night, at which point another violent incident on the part of hospital staff occurs, in particular, with at least 2 more security and Leroy Lynch.

35. At the instigation of others, Leroy Lynch, states, "I can take him," he engages me by tackling me to the back of the room that is aligned with the long corridor. The motion of his tackling is likened to a "spear tackle," in which his momentum carries both me and him to the back wall of the room, where which he bangs his head off the wall.

36. He falls to the ground and I, myself, help him up and onto his feet. After this myself am placed in a stretcher and transported to **Cambridge Cahill** hospital psych unit.

37. Prior to arriving at Cambridge Cahill and after the Leroy Lynch incident, myself am injected with what is commonly referred to as a "cocktail," of medication myself loses consciousness.

38. During transport, my body, regains consciousness and though myself am already restrained on the stretcher, I receive another injection, in my upper back not my glute.

39. My body loses consciousness again and myself awakes at Cambridge Cahill in a bed, disturbed, and groggy.

40. After having arrived at Cambridge Cahill hospital, myself am neither medicated nor have any incidents and am promptly discharged after approximately 3 days, coming to an end on June 11nth, 2011.

41. Nearly a month later charges of assault and battery are brought against me alleging that myself, "Richie Accime," "Did strike and beat," "Leroy Lynch," There is conflicting testimony both in audio transcribed court recordings of other security staff, Leroy Lynch, and Joseph Cataldo. (insert exhibit)

42. In one recording of turret tapes Boston Medical Center security staff are described having engaged in the following conversation: "we doused," "we covered him," with pepper spray, this officer

stating that he had emptied his spray canister, someone else needed a new one, and a third needed a new one.

43. One officer admits that officers "sprayed the big dude because he didn't want to comply; but he didn't really fight back that much," When asked would the defendant be locked up, the unnamed officer responded, "No he didn't fight." He really didn't fight anyone. He complied after you know like five people sprayed him."

44. At this point and prior my right to refuse medication had been lawful and quoting Supreme Court consideration, as follows: " <u>The defendant is correct, however, that as a general matter, the involuntary hospitalization and forcible medication of an individual on account of mental illness is not permitted unless there is compliance with the specific statutory requirements of G.L.c. 123 section 12 through 21.</u>

45. "<u>It has long been the law that medical treatment of a competent patient without his consent is a battery and is permitted only for incompetent patients where procedural protection are followed.</u>" Furthermore the description and emphasis on myself as "too big, too jacked," "built like a friggin refridge,"along with similar allegations and possible perjury, that, myself did strike and beat Leroy Lynch, seem to imply profiling that because of my size, that myself would be violent and in the least shows the state of mind of security personnel who did create and escalate a hostile situation, furthermore it is clear evidence of genetic discrimination. Let the audio transcripts from the court proceedings on (insert date) reflect the inconsistencies in testimony, fraud and perjury in their written reports, and an overall sense, with acts committed, of human rights violations, constitutional violation, brutality, and excessive force.

46. Still there was no actual acts of violence on my part up to this point or prior. Myself am pepper sprayed from Sunday to the following Tuesday in intervals. Fraudulent charges are brought against me, perjury is committed, and human rights violations to say the least. Please see the following to corroborate my allegations. *(Insert Exhibit)*

47. After finally being transported to Cambridge Cahill, myself am neither medicated nor is there any legitimate need to medicate myself. Another 3 day evaluation is executed without any documentation or presentation of such to myself and ultimately would amount to a Patriot Act detention or Kidnapping and Domestic Terrorism and Character Assassination in my light.

48. The remainder of my 3 day evaluation at Cambridge Cahill is without medication and incident until my discharge.

49. It should be noted also that in my medical records, my actual weight for that time frame was 238 lbs. and not 270 lbs. as shown in security reports and conflict with the same days vital records weight.

50. Please find attached the following memorandums of law, exhibits, and transcripts as displayed.

51. In the month of September 2013, myself, **Richie Accime**, commences a health fast and continue said fast for some days. Although a former guardian, **Marie Clement**, becomes concerned, myself makes attempts to inform her of the nature and benefits of fasting. She disregards rational explanations and calls for "emergency services," and does so after me and her boyfriend get into a peaceful bible debate. She exits the residence of <u>**31 Clarkwood**</u> and sometime afterwards approximately 4-6 Boston Police cops in uniform arrive at the residence and enter the kitchen where my self was located.

52. Myself remains seated and respond accordingly to officers engagements regarding my mental health. They depart and conclude there is no further need for their presence or to bring me to a hospital for evaluation. Prior to this and afterwards there is no violence on my part, neither is there any excessive force or brutality on their part.

53. On this same day, maybe an hour apart, EMT's arrive at the same residence and make assessments as to my mental health in the format as follows: "Who is the current president?" "Do you know where you are?" etc., myself provides the correct responses.

54. After determining that myself am competent, they depart from the residence a second time. This time myself escorts them to the downstairs door, where myself observes Marie Clement in tears at the gate to the house making remarks regarding myself, although prior to this she was acting instigative and irate.

55. Eventually, cops inform me that myself must leave or be section 12'd. In the process of gathering my things a neighbor observing offers me a couple nights stay. Myself accepts their hospitality and spend the night. The next morning, 2 officers and a Best Team evaluator arrive at the neighbors' house where myself am staying. They present a white piece of paper and with an ambulance on standby inform me that myself am being "sectioned 12," myself cooperates and there is no violence or resistance on my part.

56. Myself am put on a stretcher and inside an ambulance and taken to Boston Medical Center against my will despite my request to go to Cambridge Cahill or Steward Hospital. After arriving, my psych intake is done in less than 5 min by **Anna Fitzgerald**, she determines that myself am hyper-religious, hyper-vigilant, hyper-sexual, etc.

57. Having only briefly described the health reasons for my fast and the additional "religious reasons", we do not engage in the religious discussion for any longer than a minute, if at all. My sexual behavior and activity is not discussed at all and Anna Fitzgerald seems persistent on discussing

why, how, when, and where my being meditate, even in this myself does not entertain the discussion for what maybe 2 min. Myself refuses any and all medication and am held against my will for a period longer than 3 days but not exceeding 20 days in what is conflicting with the section 12, evaluation period, M.G.L. ch 123 section 12.

58. During this stay at the hospital, blood is stolen from my body in the guise of an "emergency situation," myself is coherent, not under the influence of any class of drugs, or alcohol. During the final weeks (last 2 weeks) of September, myself am eventually transferred to Westwood Lodge Hospital and am not afforded an "emergency hearing," as myself am entitled to within 24 hours. Instead a hearing was commenced without my physical presence allegedly by "Valerie Rust," this supposedly took place still outside of 24 hours of my request for an "emergency hearing."

59. While at Westwood Lodge a commitment hearing is commenced and myself am represented by "Valerie Rust," myself am told that an opportunity to speak and give my disposition at the hearing would be afforded. Neither am myself given an opportunity to speak or have a fair hearing. The doctor, Dr. Matthews even admits that myself has not exhibited any symptoms consistent with paranoid schizophrenia. He is questioned as to any auditory and/or visual hallucinations and testifies that he has not observed myself exhibiting any of those symptoms. Police reports are read and cross examined at said hearing.

60. At the end of the hearing, with judge McGuinness presiding, myself was found incompetent and a Rogers Order is issued for forced medication. The doctor begins with Risperidone and eventually moves on to Haldol 20mg/day **(check dosage)**

61. By the time myself am transferred to Arbour Quincy my mind is clouded, confused, and declining steadily, my body experiences significant and rapid weight gain, my morning erection defunct and my sense of self control decreases substantially, as detailed by the US Surgeon Generals' warning regarding giving anti psychotics, myself am actually becoming psychotic because of administration of anti-psychotics to someone who was previously not psychotic.

62. At Arbour Quincy an appeal is commenced on my behalf. On one particular night, I, myself prevent a female staff worker from being further assaulted by a patient.

63. The medication leaves me in a half conscious, zombie like state, sleeping all day. Myself am eventually transferred to Arbour JP and after about a month and a half to two months of continued Haldol my body is released to the care of DMH workers and social workers, that being "**Daniel Abraham**," and "**Noelle Nero**," with attending evening staff at **Solomon Carter Fuller**, located on the Boston Medical Center campus. Myself did not request residence at Boston Medical Center, and verbally oppose and make demand as to who assigned me there, as I was informed by a judge to stay away and a stay away order in place against my being at Boston Medical Center.

64. Though still very much under the influence of Haldol, myself am told that i would be receiving social security income and SSDI, despite my initial contesting of it, eventually due to the mental and physical incapacitated state myself am left in, myself resolves in accepting. They start sometime in the early year of 2014. Myself maintains that prior to medication with anti-psychotics, my being was fully competent in regards to my health and wellbeing.

65. Myself maintains the right to religious freedom which was violated when my fast was interrupted and my bodily integrity violated, compromised and my right to exercise naturopathic remedies and medicine.

66. In 2014, myself am again hospitalized and taken to Steward Hospital, no medication is administered, myself am released post evaluation.

67. On November 12, 2016 myself am again hospitalized for no legitimate reason from Ashmont Station to Steward Hospital.

68. Myself immediately request an emergency hearing and despite the on-going of a commitment procedure, with ample time beforehand, to conduct a hearing within 24 hours of the time of my request. Myself am never afforded one and am committed, though myself provided **religious preclusion** to abstain from anti-psychotic pharmaceuticals.

69. My body is put in intense back pain due to medication.